Filed 4/28/23  In re K.M. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re K.M. et al., Persons Coming Under the Juvenile Court Law. | B321768 (Los Angeles County Super. Ct. No. 22CCJP01001) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GARY M.,<br><br>Defendant and Appellant. | |

APPEAL from the jurisdictional and dispositional orders of the Superior Court of Los Angeles County, Pete R. Navarro, Judge Pro Tempore. Affirmed.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

The Los Angeles County Department of Children and Family Services (DCFS or the agency) initiated juvenile dependency proceedings concerning K.M., who was 15, and her brother, A.M., who was 5. DCFS alleged dependency jurisdiction was proper because father physically assaulted K.M., causing her to suffer bruising, swelling, and marks on her head, neck, chest, and knee. The juvenile court later sustained the petition's jurisdictional allegations, removed the children from father's custody, and ordered him to participate in various services, including an anger management program.

On appeal, father challenges the juvenile court's jurisdictional findings as to both children. Applying the deferential substantial evidence standard of review, we reject his assertions that K.M. did not suffer serious physical harm and that father's conduct fell within the scope of reasonable parental discipline. We further conclude there was substantial evidence that father has a propensity to engage in violent acts, thereby creating a substantial risk of serious physical harm to A.M. We thus affirm.

# PROCEDURAL BACKGROUND[1]

We summarize only those aspects of the procedural history that are relevant to our disposition of this appeal.

On March 17, 2022, DCFS filed a dependency petition concerning siblings K.M. and A.M., who were then 15 and 5 years old, respectively. DCFS alleged dependency jurisdiction over K.M. was proper pursuant to Welfare and Institutions Code[2] section 300, subdivisions (a) and (b)(1) (i.e., counts a-1 and b-1), and the juvenile court should assert jurisdiction over A.M. pursuant to subdivision (j) of that statute (i.e., count j-1).

Counts a-1, b-1, and j-1 of the petition each alleged the following: "The children, [K.M.'s] and [A.M.]'s father . . . physically abused the child, [K.M.] On or about 02/15/2022, the father repeatedly struck the child's head with the father's fist. The father forcibly threw the child to the ground, grabbed the child's hair and pushed the child's face into the ground. The father choked the child's neck with the father's hands. The father forcibly grabbed the child's arms with the father's hands. The father struck the child's body with the father's hands. The physical abuse by father inflicted bruising, swelling, tenderness and marks to the child's head, face, neck, chest, wrists, knee and leg. The father was arrested for PC 273A(A)- Child Abuse with

---

[1] We derive part of our Procedural Background from undisputed portions of the parties' appellate briefing. (See *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party.' "].)

[2] Undesignated statutory citations are to the Welfare and Institutions Code.

Possible GBI/Death. Such physical abuse was excessive and caused the child, [K.M.], unreasonable pain and suffering. The physical abuse of the child, [K.M.], by the father, endangers the child's physical health, safety, and well-being, creates a detrimental home environment and places the child and the child's sibling, [A.M.], at risk of serious physical harm, damage, and physical abuse."

In March 2022, the juvenile court held a detention hearing, and declared that father is K.M.'s and A.M.'s presumed father. The court found a prima facie case that K.M. and A.M. were minors described by section 300, detained the children from father, and released them to mother's custody.

On June 24, 2022, the juvenile court sustained the petition as pleaded, declared the children dependents, removed the children from father's physical custody, released the children to mother, authorized father to have visits with the children, and ordered DCFS to provide services to father. Regarding visitation, the court permitted father to have monitored visits with K.M., and unmonitored visitation with A.M., so long as the visits occurred "in a public setting." Further, the court ordered father to participate in anger management and developmentally appropriate parenting programs, and conjoint counseling with K.M.

On December 22, 2022, the juvenile court issued a juvenile custody order that awarded sole physical custody of K.M. to mother, awarded joint legal custody of K.M. to mother and father, and granted father monitored visitation with the child. Concurrent with the issuance of the juvenile custody order, the

4

court terminated dependency jurisdiction over K.M. Father did not appeal the juvenile court's December 22, 2022 orders.[3]

On April 14, 2023, the juvenile court awarded mother and father joint legal and physical custody of A.M., and terminated dependency jurisdiction as to that child.[4]

## STANDARD OF REVIEW

" 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings [of the juvenile court,] . . . we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the [juvenile] court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the [juvenile] court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the [juvenile] court. [Citations.] . . . [Citation.]" . . . ' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Appellant "has the burden of showing the jurisdictional finding[s are] unsupported by substantial evidence." (See *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 598.)

---

[3] We previously took judicial notice of the December 22, 2022 orders and the juvenile court's docket.

[4] We, sua sponte, take judicial notice of the juvenile court's April 14, 2023 orders. (Evid. Code, §§ 452, subd. (d), 459.)

## DISCUSSION

As a preliminary matter, we observe that father's challenges to the juvenile court's jurisdictional findings are arguably moot because the juvenile court terminated jurisdiction over the children, and awarded mother and father joint legal and physical custody of A.M., and because father failed to appeal the order awarding mother sole physical custody of K.M. and granting father only monitored visitation with K.M.[5]  We need not decide whether father's appeal is in fact moot because even if it were, we would exercise our discretion to reach the merits.[6]

---

[5] (See *In re D.P.* (2023) 14 Cal.5th 266, 276–277 (*D.P.*) ["A case becomes moot when events ' "render[ ] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief." ' [Citation.] . . . [¶] . . . In this context, relief is effective when it 'can have a practical, tangible impact on the parties' conduct or legal status.' "]; *In re C.C.* (2009) 172 Cal.App.4th 1481, 1488 (*C.C.*) ["As a general rule, an order terminating juvenile court jurisdiction renders an appeal from a previous order in the dependency proceedings moot."]; *In re S.G.* (2021) 71 Cal.App.5th 654, 666–667 ["To effect an actual change in custody and visitation rights [after the issuance of an order awarding custody and visitation and terminating dependency jurisdiction], the appellate court would need to reverse the juvenile court's last word on custody and/or visitation—the . . . order terminating jurisdiction on those terms—which . . . the appellate court does not have the power to do if that order has not been appealed."].)

[6] (See *D.P.*, *supra*, 14 Cal.5th at p. 282 ["Even when a case is moot, courts may exercise their 'inherent discretion' to reach the merits of the dispute."]; *C.C.*, *supra*, 172 Cal.App.4th at pp. 1488–1489 [exercising the court's discretion to consider the merits of an arguably moot appeal "in an abundance of caution"].)

Turning to the substance of father's appeal, he maintains that K.M. "did not suffer serious physical harm[,] . . . father was only exercising his right to administer appropriate parental discipline and control" over K.M. during the incident, and "at the time of [the] jurisdiction/disposition [hearing], no risk of current or future harm existed" to K.M. and A.M. (Capitalization omitted.) For the reasons discussed below, we conclude that jurisdiction over K.M. was proper because DCFS presented substantial evidence that she is a child described by section 300, subdivision (a),[7] and there was substantial evidence that A.M. fell within subdivision (j) of section 300. Furthermore, we affirm the juvenile court's dispositional rulings because father's challenge to those rulings is premised entirely on his claim that the court lacked jurisdiction over the children.[8]

---

[7] In light of that conclusion, we decline to decide whether jurisdiction over K.M. was also proper pursuant to section 300, subdivision (b)(1). (See *In re Briana V.* (2015) 236 Cal.App.4th 297, 308 (*Briana V.*) [" '[T]he minor is a dependent if the actions of either parent bring [the minor] within *one* of the statutory definitions of a dependent. [Citations.]' [Citation.] 'For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings . . . .' [Citation,]" italics added].)

[8] (See *In re J.F.* (2019) 39 Cal.App.5th 70, 79 (*J.F.*) ["The juvenile court's orders are 'presumed to be correct, and it is appellant's burden to affirmatively show error.' "].)

**A.    There Is Substantial Evidence that Father Inflicted Serious Physical Harm Nonaccidentally Upon K.M., and that Father's Actions Did Not Constitute Reasonable Parental Discipline**

Section 300, subdivision (a) authorizes dependency jurisdiction if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." (See § 300, subd. (a).)  Subdivision (a) further provides:  "For purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian that indicate the child is at risk of serious physical harm.  For purposes of this subdivision, 'serious physical harm' does not include reasonable and age-appropriate spanking to the buttocks if there is no evidence of serious physical injury." (*Id.*)

Section 300, subdivision (a) "does not require the parent have intended the child to suffer serious physical harm or to be at substantial risk of such harm, although the evidence may show that. . . . [The Legislature] chose the term 'nonaccidentally,' indicating a volitional act, but without the requirement for a specific intended consequence."  (See 1 Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2022) § 2.84[2].)

Father argues that *Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72, establishes that K.M. did not suffer "serious physical harm," given that "all of the injuries [she sustained] were superficial and required no further treatment."  (Citing *Gonzalez*, at pp. 92–93.)  He also suggests

8

that K.M.'s injuries are analogous to those at issue in *In re Isabella F.* (2014) 226 Cal.App.4th 128 (*Isabella F.*), a decision in which a Court of Appeal reversed a juvenile court's assertion of jurisdiction under section 300, subdivision (a). Additionally, father claims his conduct falls within the scope of the parental right to discipline discussed in *In re D.M.* (2015) 242 Cal.App.4th 634 (*D.M.*). We reject these contentions.

In *Gonzalez,* a mother "was reported for child abuse after she spanked her 12-year-old daughter . . . using a wooden spoon with enough force to produce visible bruises." (See *Gonzalez, supra,* 223 Cal.App.4th at p. 75.) A child welfare agency "concluded that the report was 'substantiated,' and submitted it to the state Department of Justice for inclusion in the Child Abuse Central Index . . . under the Child Abuse and Neglect Reporting Act [citation] (CANRA or Act)." (See *ibid.*) The mother "unsuccessfully sought relief by administrative appeal and by petition for administrative mandamus in the superior court." (*Ibid.*)

The Court of Appeal reversed the trial court's judgment, and instructed the court to issue a writ "commanding the [child welfare agency] to either conduct a new hearing on the matter or to issue a decision finding the report in question unfounded . . . ." (See *Gonzalez, supra,* 223 Cal.App.4th at pp. 76, 95, 102.) In particular, the Court of Appeal held that "the trial court erred in categorically rejecting [the m]other's assertion that the conduct reported as child abuse constituted a reasonable attempt to discipline her child," given that "the parental privilege to impose reasonable physical discipline upon a child must be incorporated into CANRA's definitions of" child abuse. (See *id.* at pp. 85, 90, 95.)

9

In the course of arriving at that conclusion, the *Gonzalez* court remarked, "the infliction of visible bruises [does not] automatically require[ ] a finding that the limits of reasonable discipline were exceeded." (See *Gonzalez, supra*, 223 Cal.App.4th at p. 92.) The appellate court further stated, "We believe that visible bruising demarcates, or at least very nearly approaches, the outer limit for the quantum of 'damage' to be tolerated. However, we do not believe that it necessarily compels a finding of abuse unless there are grounds to find that the parent intended to inflict bruises, knew his or her conduct would do so, or should have known that bruises were likely to result from the amount of force applied and the method of its application." (*Id.* at p. 93.)

*Gonzalez* is of no assistance to father. According to DCFS's jurisdiction/disposition report, K.M. told the agency that on the evening of the incident, father " 'aggressively yelled at [K.M.]' " after she "forgot to wipe down [a] table." K.M. reported she later retreated to her room and began crying while on the telephone with her mother because father and father's girlfriend were "laughing at [K.M.]" and "making fun of [K.M.]" K.M. claimed that father told K.M. to "get out of the room and not talk to [K.M.'s mother] alone." K.M. asserted that father "suddenly grabbed [her,] . . . pushed [her] to the ground[,] . . . pulled [her] hair[,] . . . punched [her] in the back of the head twice[,] [a]nd . . . choked [her] out to where [she] couldn't breathe."

Furthermore, a medical report submitted with the jurisdiction/disposition report recites that three days after the incident, K.M. had a tender "½ inch round mass" on the back of her head, K.M.'s "right clavicular area [was] swollen[; t]here [we]re 3 red linear bruises on the right side of [her] neck and

10

right clavicle"; "[t]he outer area of the right knee [was] swollen compared to the left knee[;] . . . [and o]n the back of the right arm [was] a 1 ½ inch area of redness, abrasions and bluish bruising." In the report, the forensic medical examiner indicated that K.M.'s injuries were "consistent" with K.M.'s claims that father "hit, grabbed and pushed" her.

The juvenile court was entitled to credit K.M.'s account of the altercation and the findings of the medical report, and to reject father's assertion that K.M. had inflicted "any bruises or marks" on herself as she "struggle[d]" to prevent father from grabbing the telephone from her.[9]  Further, the court could have inferred reasonably from this evidence that father should have known that bruises were likely to result from the nature and extent of the force he applied to K.M.  Accordingly, substantial evidence establishes that K.M.'s bruising, swelling, and other injuries exceeded "the outer limit for the quantum of 'damage' to be tolerated" by the law.  (See *Gonzalez*, *supra*, 223 Cal.App.4th at p. 93.)

*Isabella F.* is likewise of no assistance to father.  There, a juvenile court asserted jurisdiction under section 300, subdivision (a) after a nine-year-old "reported that [her] mother hit her in the face, grabbed her by the neck, and locked her in the

---

[9]  (See *In re Jordan R.* (2012) 205 Cal.App.4th 111, 135–136 ["The appellant has the burden to demonstrate there is no evidence of a sufficiently substantial nature to support the findings or orders.  [Citation.]  We draw all legitimate and reasonable inferences in support of the judgment.  [Citation.] . . . [¶] . . . To the extent the trial court's findings rest on an evaluation of credibility, the findings should be regarded as *conclusive* on appeal."].)

11

bathroom." (See *Isabella F.*, *supra*, 226 Cal.App.4th at pp. 131, 135, 138.) "A social worker reported that [the minor] had scratches, consistent with fingernail scratches, on one side of her face and had a gouge mark on her left earlobe consistent with a fingernail injury." (*Id.* at p. 132.) Although the *Isabella F.* court acknowledged that the "mother failed to interact appropriately with [the minor] . . . and that [the] mother would benefit from services related to anger management," the panel concluded the evidence did "not support a finding that [the minor's] injuries amounted to 'serious physical harm' under section 300, subdivision (a)." (See *Isabella F.*, at pp. 138–139.)

Father intimates the instant case is akin to *Isabella F.* because, "while father may have to some degree 'failed to interact appropriately' with [K.M.], the injuries did not satisfy the requirements of section 300, subdivision[ ] (a) . . . ." We disagree. The mother in *Isabella F.* did not push her daughter to the ground, pull her hair, punch her in the head, or interfere with her child's breathing by choking her. (See *Isabella F.*, *supra*, 226 Cal.App.4th at pp. 131–132 [describing the event at issue in that case].) Further, K.M.'s bruising, tenderness, swelling, and redness on her head, neck, clavicular area, arm, and knee were far more severe than the "fingernail injuries to [the child's] face and earlobe" in *Isabella F.* (See *D.M.*, *supra*, 242 Cal.App.4th at p. 642 [summarizing the facts of *Isabella F.*].) *Isabella F.* thus is not instructive.

Similarly, *D.M.* does not undercut the juvenile court's assertion of jurisdiction over K.M. In *D.M.*, "[a] mother used her hand or a sandal to spank her two children on the buttocks on those 'rare' occasions when lesser disciplinary measures proved ineffective, but never hard enough to leave bruises or marks."

(*D.M.*, *supra*, 242 Cal.App.4th at p. 637.)  The reviewing court concluded the juvenile court erred in asserting jurisdiction under section 300, subdivisions (a), (b), and (j) without first determining "whether the spankings qualif[ied] as reasonable parental discipline," and remanded the matter "so that the court may in the first instance apply the reasonable parental discipline doctrine."  (See *D.M.*, at pp. 637, 639–640.)  According to the *D.M.* court, "Whether a parent's use of discipline on a particular occasion falls within (or instead exceeds) the scope of this parental right to discipline turns on three considerations: (1) whether the parent's conduct is genuinely disciplinary; (2) whether the punishment is 'necessary' (that is, whether the discipline was 'warranted by the circumstances'); and (3) 'whether the amount of punishment was reasonable or excessive.'  [Citations.]"  (*Id.* at p. 641.)  Father's conduct falls outside reasonable discipline because regardless of whether his acts were genuinely disciplinary and some degree of punishment was warranted, the evidence summarized earlier in this part demonstrates that the amount of punishment he inflicted was excessive.[10]

---

[10]  Father argues for the first time in his reply brief that the juvenile court made statements at the jurisdictional hearing demonstrating that its "understanding of a parent's legal right to physically discipline their child was, at the very least, misplaced, if not completely wrong."  In particular, father claims the juvenile court indicated that "father's actions in disciplining [K.M.] would have been acceptable" if father had "come home and 'found out his child had sold all of the stereo equipment or hocked his jewelry.' "  We disregard this belatedly raised argument.  (*In re Karla C.* (2010) 186 Cal.App.4th 1236, 1269 ["We need not

13

We further note father contends that, "[i]n order for the juvenile court to have assumed jurisdiction, it must have found, based upon this incident, that [K.M.] was subject to future harm." This contention fails as a matter of law. As we noted earlier in this part, section 300, subdivision (a) authorizes dependency jurisdiction where "[t]he child *has suffered*, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." (See § 300, subd. (a), italics added.) Because substantial evidence demonstrates that father nonaccidentally caused K.M. to suffer serious physical harm, the juvenile court did not need to find that father presented a substantial risk of future harm to K.M. in order to assume jurisdiction over her.[11]

---

address . . . arguments . . . raised for the first time in [a] reply brief."].)

[11] (See *In re David H.* (2008) 165 Cal.App.4th 1626, 1641, 1644 ["The plain language of section 300, subdivision (a) provides that a child is within the jurisdiction of the juvenile court if he 'has suffered . . . serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian.' [¶] . . . [¶] We hold that, in the absence of unusual circumstances . . . (such as a substantial lapse of time between the incident and the filing of a petition or the date of a jurisdictional hearing), an allegation that a child *has suffered* serious physical harm inflicted nonaccidentally by a parent or guardian is sufficient to establish jurisdiction under section 300, subdivision (a)."].)

B. **Substantial Evidence Establishes that Father Exposed A.M. to Substantial Risk of Serious Physical Harm**

Section 300, subdivision (j) authorizes dependency jurisdiction over a child if: "The child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions." (§ 300, subd. (j).) Subdivision (j) further provides: "The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child." (*Ibid.*)

Father contends that, "by the time of jurisdiction, there was no reasonable, sufficient evidence that father posed any future risk of harm to . . . [A.M]." He insists that his altercation with K.M. was "an isolated incident . . . ." Father also argues he and A.M. "had several visits with no reported problems," "[t]here is no indication that father had ever administered any punishment to [A.M.] other than verbal reprimands and spanking on the butt with an open hand," A.M. "said he felt safe with both father and mother," and the juvenile court "indicat[ed]" it "had little concern that father was a threat to" A.M. when it "granted [father] unmonitored visits in a public place with" A.M.

Father overlooks record evidence supporting the juvenile court's finding that he presented a substantial risk of serious physical harm to A.M., and father ignores our obligation to "draw[ ] all reasonable inferences in support of the juvenile court's findings . . . even if other evidence supports a different

15

finding. [Citation.] . . . [Citation.]' [Citation.]" (See *In re L.B.* (2023) 88 Cal.App.5th 402, 411–412 (*L.B.*).)

First, as we explained in Discussion, part A, *ante*, there is substantial evidence that father grabbed K.M., pushed her to the ground, pulled her hair, punched her in the back of the head twice, and choked her.

Furthermore, the detention report contains statements from mother that may be reasonably construed as evidence that father had perpetrated acts of domestic violence against her in the past. Specifically, the detention report states the following: "Mother shared she had an abusive relationship with father. Mother stated the relationship was emotional and verbal. Mother stated there was physical domestic violence but denied

16

law enforcement being involved. . . . Mother stated father was continually abusive . . . ."[12]

The detention report also shows that A.M. informed the agency that father spanks him "a lot," A.M. "cries" "when father spanks him a lot," and A.M. "is scared" "when father spanks him." Per the report, A.M. stated that father yells at A.M., "father yells at [K.M.] a lot," and, on one occasion, A.M. heard father threaten to " 'slap' " K.M. if she " 'said one more word . . . .' "

Despite the fact that father has not assaulted A.M., the juvenile court could reasonably have inferred from the evidence discussed above that father could not control his anger and, as a

---

[12] In its respondent's brief, DCFS considers this excerpt from the detention report to be evidence that "father was violent with mother . . . ." In his reply, father does not dispute DCFS's characterization of this portion of the record, although he does insist his "[f]ailure to reply to a particular point raised in respondent's brief is not a concession or waiver of such point." Regardless of whether father's failure to address this issue constitutes a formal concession, we conclude he has failed to discharge his burden of showing that mother's statements could not be reasonably construed as evidence that he subjected her to acts of domestic violence. (See *J.F.*, *supra*, 39 Cal.App.5th at p. 79 ["The juvenile court's orders are 'presumed to be correct, and it is appellant's burden to affirmatively show error.' [Citations.] . . . ' "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' "]; *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981 [" 'A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.' "].)

consequence, had a propensity to engage in acts of violence. (See *L.B.*, *supra*, 88 Cal.App.5th at p. 411 [" 'The court may consider past events in deciding whether a child currently needs the court's protection.' [Citations.] Indeed, in a domestic violence situation, past violence is highly probative of the risk that violence may recur.' "]; cf. *Guardianship of Simpson* (1998) 67 Cal.App.4th 914, 919–920, 925, 938 [observing, in the course of reviewing an order terminating a guardianship, that a parent's acts of "great violence and rage" may "show a *propensity toward violence* on his part," and that "any propensity to [engage in domestic violence] is certainly highly relevant as regards [to] children's welfare"].) Accordingly, the court did not err in concluding that its intervention was necessary to protect A.M. from father. (See *In re S.R.* (2020) 48 Cal.App.5th 204, 219 [" ' "[T]he court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child." ' "].) Indeed, by ordering father to complete an anger management program, the court recognized that father's predisposition threatened his children's welfare. (See *Briana V.*, *supra*, 236 Cal.App.4th at p. 311 [noting that a juvenile court is charged with " 'fashion[ing] a dispositional order' " designed to " 'best serve and protect the child's interests' "].)

Finally, father's reliance on the juvenile court's order granting him unmonitored visits with A.M. in a public setting is unavailing. Father ignores the juvenile court's order removing A.M. from his custody, meaning the court found clear and convincing evidence that allowing A.M. to reside with father would have presented a substantial danger to the child's physical

health, safety, protection, or physical or emotional well-being.[13] He also overlooks the fact that although DCFS was not tasked with supervising father's visits with A.M., it is apparent the court's proviso requiring those visits to occur in a public setting was intended to mitigate the risk of father harming A.M. Viewing the record in the light most favorable to the juvenile court's jurisdictional findings, we reject father's contention that "the juvenile court had little concern that father was a threat to [A.M.]"

In sum, substantial evidence supported the juvenile court's findings that jurisdiction over K.M. was proper pursuant to section 300, subdivision (a), and that A.M. was a child described by subdivision (j).

---

[13] (See *In re L.O.* (2021) 67 Cal.App.5th 227, 244 [noting that § 361, subd. (c)(1) requires the juvenile court to find the clear and convincing evidence standard discussed in the text accompanying this footnote to have been satisfied before it may remove a child from a parent with whom the child resided at the time the petition was initiated]; *In re J.N.* (2021) 62 Cal.App.5th 767, 777 [indicating § 361, subd. (d) imposes the same clear and convincing evidence standard vis-à-vis removal of a child "from a parent with whom the child did not reside when the petition was filed"].)

## DISPOSITION

We affirm the juvenile court's jurisdictional and dispositional orders.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.